Next case for argument is Schmid v. McCauley, Mr. Wackerly. May it please the court, we are here today because Anastazia Schmid was condemned to 55 years in prison for killing a man who had beaten, raped, and tortured her and molested her daughter for the years leading up to the death. Is there any challenge to the length of her sentence? No there's not, Your Honor. At the time she received her legal documents, was there any time remaining on the one year limitations period or had it already run? It had already run, Your Honor. The limitations period expired in May. She did not receive her documents until October of 2013. We're here because Anastazia was tried at a time when she was taking 15 powerful psychotropic drugs where her co-counsel testified that one of the largest difficulties was determining when Anastazia was responding to reality as opposed to the voices in her head. And where her lead counsel received what he believed to be a firm plea offer during the trial that would have had her released from prison 8 to 10 years ago, yet he failed to communicate this to her for he felt she was so mentally debilitated she would not even be able to understand. What is her mental illness? She has a long history of schizoaffective disorder, bipolar disorder, and with psychotic tendencies. And what? With psychotic tendencies, schizoaffective, bipolar. The Constitution demands that a defendant... Has she committed other violent acts? She has no prior criminal record. So, despite being psychotic and schizophrenic, she didn't go around attacking people? There was, in the record, there is an occurrence where she worked at a tattoo parlor where she attacked a man with a hammer because she thought a demon was coming out of his head. There was also different points in the record where she would disappear for days on end unaware of where she was. She got found by the police in the alley with no clothes on at one point after being gone for a week. That's not violent, it's the hammer, so the hammer would be an example that her mental illness might have driven her to violent acts. That is correct. She also, when she was a child, her mental illness dates back to a teenager. During her teenage years, she threatened to kill her stepfather because of his abusive treatment of her. As they're stating, the Constitution demands a defendant... Counsel, before we get to the Constitution, which of course the District Court never reached, we need to figure out whether the claim is timely. That's logically antecedent to anything else. Correct. And I should think if we agree with your proposition that it is timely, the remedy is to remand to the District Court rather than to reach an issue the District Judge never reached. So I think you need to address timeliness. Okay, thank you, Your Honor. Ms. Schmid should be granted equitable tolling because she's a first-time habeas petitioner who was denied access to her legal documents despite repeated requests... What's the standard of appellate review on that question? On the equitable tolling issue? Yes. In the case, Socher v. Bounton, this case, this court addressed analogous fact patterns. The standard of review is in the Holland case by the Supreme Court, a defendant is entitled to equitable tolling if they present extraordinary circumstances... That's not a standard of review. I'm asking about the relation between the Court of Appeals and the District Court, not what legal standard the District Court should be applying. The standard of review is that the Circuit Court should review the District Court's opinion and see if it's an unreasonable determination of the facts or misapplies clearly established federal law. The District Court stated that she was not entitled to equitable tolling based on two findings. One, that she presented no information regarding the efforts made to obtain her legal documents, and two, that she did not explain why the case documents were necessary. What evidence would you expect to present if we remanded for a hearing or for further development of the record as to equitable tolling? Her equitable tolling claim is based on the premise that she, as I stated, first of all was denied access to her legal documents. She would present evidence in the form of affidavits as well as a letter of the repeated counsel to get him to send her legal documents as well as the repeated efforts she made with the court. In addition, for the first half of the limitations period, she was still experiencing the debilitating effects of her mental illness as well as psychotropic drugs. We would be able to enter into the record the drugs she was on and the effect those had on her and how they precluded her ability to put forth the legal argument. She was on 15 different psychotropic drugs, am I correct? Correct, and she continued to administer those drugs until October 2007, which was over half the limitation period run during that time. Following that, she continued to request her legal documents and was denied until October 2013. The only evidence that is in the record before the district court is her sworn petition as well as the corresponding briefs that state that she repeatedly requested these documents from both the courts as well as her attorneys and was denied at every request, that also state that she was dealing with the effects of the psychotropic medication for the first half of the limitations period and it prohibited her from putting forth the legal argument. Those were the only claims in the district court record. The state made no effort to rebut any of these claims. Therefore, at the very least, there should have been an evidentiary hearing for her to have it up. She killed Heathcote because she thought he was a child molester, right? Among other things, he had been raping, abusing, and torturing. There are plenty of reasons for killing him, but I don't understand, what is the basis for thinking that if she were sane, she wouldn't have done that? Because sane people would kill this guy, right? You don't have to be crazy to want to kill someone like Heathcote. That is correct. But the basis for this... Insane people, you know, the notion somehow that insane people act fundamentally different from other people isn't true. You know, schizophrenics, when they cross the street, you know, they're watching out for traffic, right, to hit them. Her mental illness, as it was documented in the record, was not a linear disease. I know, but what is the reason for thinking that if she didn't have mental illness, she wouldn't have killed him? I believe the issue in regard to the situation in which every insane person is assumed not to be responsible for criminal activity. I believe the issue upon appeal regarding her mental illness is actually the fact that she was not competent during the trial, and therefore her constitutional rights were violated. She was taking 15 psychotropic drugs prior to the trial. So the insanity issue involves her behavior at the trial? No, the insanity issue, which was decided on the criminal appeal, is that she was insane at the time of the killing. The post-conviction appeal, which we are addressing today, the mental... Okay, so why does it matter if she was insane during the trial, why does that matter unless she has some defense to the murder charge? If her only defense to the murder charge was a psychiatric defense that the psychiatrists have rejected, what possibility for relief does she have? The Constitution, because it demands competency during a criminal trial, is in and of itself a violation of the constitutional rights, that she was not competent to stand trial. Therefore that in and of itself requires the trial to either be retried or the criminal trial or the writ to be granted based on the fact that she's being held against her constitutional rights. So the issue upon appeal regarding her mental illness is she was severely hallucinating during the trial. She was mentally debilitated from the amount of drugs she was taking. She was unable to communicate or assist with her counsel as her lead counsel testified in the post-conviction hearing. And therefore, because of that, it's a fundamental constitutional right to be tried while competent. Her lead counsel in the post-conviction hearing stated he felt she was unable to make knowing and voluntary decisions. He said she was chemically immobilized, and as I made a reference to before, he received what he thought was a firm plea officer from the prosecution during her criminal trial. What were the decisions she might have made? If she was competent. The premise of the plea offer, I think, was maybe the most egregious error. It was the prosecution brought forth an offer for reckless homicide, which her lead counsel believed was a firm offer. If she would have accepted that, she would have been released from prison eight to ten years ago. Her counsel stated in the post-conviction hearing that he felt she was so debilitated that he couldn't even bring the offer to her, and if he had brought the offer to her, he would have been met with only a blank stare. That in itself is a grave injustice. As the Supreme Court has stated recently, the plea discussions are a large premise for our legal system now, often more important than trial. For her to not even have the right to engage in a plea discussion is that would have had her released, as I said, if she would have received the maximum sentence under reckless homicide under Indiana law, she would have been released eight to ten years ago. But the fact that she was so debilitated during trial preempted that for her. So because of that, I feel that the writ should be granted, as this case did, as this Court did in McManamus, granting the writ outright, because a competency hearing at this point would be futile, given the fact that she is not on the same amount of drugs or in the same situation. Okay. Well, thank you, Mr. Wackerle. Thank you. So, Mr. Flores? May it please the Court. To address the threshold question here, the District Court properly found that Petitioner's Habeas Petition was untimely and that she . . . further before rejecting the possibility of equitable tolling, particularly given her well-documented history of mental illness, the fact that she was pro se below, and the fact that she was denied access to her own case file for so long. I mean, and if I might, what do we make of the fact that the trial judge evidently thought it was not his place to question Ms. Schmidt in order to assess her competency? So those are two very different questions, but . . . Okay. Let me address the equitable tolling question first, if I may. Sure. With respect to the District Court's findings, there was nothing for the District Court to find because Petitioner, when presented the opportunity on Habeas relief, did not offer any evidence into the record other than her self-serving statements in her Habeas Petition. Petitioner relies primarily on Socha, the first Bowdoin case out of this circuit, for the reasons why she should be entitled to equitable tolling. In Socha, the Petitioner was denied access to her legal file for almost the entire one year period. However, in that case, Petitioner presented evidence to the District Court in forms of letters, communications, requesting his legal file from his trial counsel. He also sent letters to his trial counsel's supervisor, and it's important to note at this point, Socha was unrepresented when he was requesting these documents from his trial counsel. He also sent letters to the trial court requesting transcripts, and importantly here, though, when... Let's please talk about Judge Lawrence, who simply dismissed her petition as untimely without developing the record, without giving her the help of appointed counsel. Here's a Petitioner with a well-documented history of mental illness, including prior psychiatric findings of incompetence to stand trial and legal insanity. It seems to me that a federal court really ought to ensure that the proper basis for tolling is fully developed on the record before deciding on whether a Petitioner is entitled to equitable tolling. He was very critical of her for not indicating how and when she asked for copies of her legal documents, and that is the type of fact that he could have developed had he convened a hearing, for example. He could have scheduled a hearing, but the fact remains here in this case, the evidence that was presented by the Petitioner in this case did not entitle her to equitable tolling. The district court was not presented with any evidence in the original Habeas Petition. If you look closely at her original petition, under timeliness, there's no mention of competency of why she was requesting more time. It was simply that her legal file, she would not have access to her legal file, that she had limited law library access as a DOC prisoner. The woman is a prosecutor. Well, Mr. Markerly said that she wasn't capable of evaluating the plea offer. That's correct, Your Honor. There is testimony at the post-conviction hearing from her lead counsel that he did receive a plea offer in the bathroom during a recess from the prosecutor, and that he discussed that with the judge, and he thought the judge, after discussions, thought that plea offer wasn't going to happen. And he does, on direct examination, state that if he would have discussed that plea offer with her, there would have been a blank stare. However, on cross-examination, he says, I don't remember the exact reason why I did not bring that to your attention. And also, it's important, at the post-conviction hearing... That's quite some backtracking, isn't it? I don't understand what you're saying. Was she consulted about the plea offer? The prosecutor testified that there was no plea offer. For what? The prosecutor at the post-conviction hearing testified that he did not offer a plea to the defense counsel in the urinal. He said, it's not my practice to do so. Well, her lawyer thought he had. He had, correct. And the post-conviction... And the only person, it seems, that wasn't told about this is the person at stake. Only she isn't told. If I may. The post-conviction court had before contradictory testimony. Testimony from the prosecutor that his practice, there was no written offer, there was no offer given to defense counsel. Then you have the testimony of defense counsel. So the post-conviction court, at that point, was well within its discretion to give weight to the prosecutor's testimony over defense counsel's. I don't understand. Why? Isn't that why we have hearings? Because you have here, the trial took place 10 years prior. And then the prosecutor's testimony at the post-conviction hearing was uncontradictory. It wasn't, it was unequivocal. He testified that there was no plea offer. Then you have defense counsel's testimony at the post-conviction hearing, which was inherently equivocal. He testified that there was a plea offer, that I couldn't bring it to her attention because I would have just received a blank stare, but then he says... You're speaking too fast. So would you slow down? Yes. Now, you say the defense counsel said he would have brought it to her attention, but, or what? Yes. On direct examination, he states, I would have brought it to her attention, but that would have just elicited a blank stare. On cross-examination, he testifies, I don't recall why I did not bring it to her attention. So that suggests that there was something going on there. Correct. According to his belief of what happened 10 years earlier at trial. The defense lawyers. Correct. Because the trial happened 10 years earlier. Wouldn't there be a record of some sort involving a plea offer? And that was the prosecutor's point. There was no written offer. It wasn't his practice to discuss plea agreements in the bathroom, and there was no plea offer. And so post-conviction court was faced with that contradictory testimony and afforded the credibility determination to the state in that instance. However, back to equitable tolling. Without a hearing on it. That's because. Yeah. All this sort of, you know, whispering back and forth. That's correct. Because as the post-conviction court found that there was no plea offer, so therefore there was nothing to discuss. Now, importantly, in Socha, this court states, unlike many cases in which a tardy petitioner puts nothing before the court until the time had passed and then seek equity. Here in Socha, he sought, once he knew his time was about to expire in federal habeas court, he sought a protective extension motion saying, I know my time's about up, but I just received my legal file and I need more time. Here, at no point did petitioner ever present any motion to the federal court seeking extension apprising the federal court of the circumstances surrounding her case. You know, Mr. Flores, the circumstances in this case may or may not be equivalent to those in Socha, but it really would have been nice if that determination were made on the basis of a complete record. We do not have that here. I agree. And it was petitioner's burden before the district court to apprise the court of what her extraordinary circumstances were and how she was diligent in pursuing those remedies. In her initial petition, she states only that I had sought my legal file. It wasn't until her traverse. Were you talking about her or her lawyer? Her. Her pro se habeas petition. She's pro se. That's correct. And this court has long held that pro se petitioners and their inability to understand the depth of time restraints is not a ground for equitable tolling. You know, that's very hard to accept when you're dealing with an insane person. If ever there were a case, Mr. Flores, where a woman or anyone received short shrift from our justice system, we're seeing it today. I would have to respectfully disagree. So you think insane people without a lawyer are held to the same standard as sane represented people? There was no finding that she was in fact insane. At trial, there was, as far as her capacity to appreciate the wrongfulness of her conduct for the offense. She's sane. She is. She's sane. She's always been sane. The jury found her sane. Yes. And there were doctors that found her sane as well. Did the jury find her sane or did the jury find her guilty? They found her guilty but mentally ill, not guilty by reason of insanity. I'm sorry. They did what? They found her guilty but mentally ill as opposed to not guilty. So the jury didn't think that she was sane. I would disagree. Maybe they did think she was sane or else they would have found her guilty but mentally ill. Well, if you're mentally ill, you're nuts, right? That's what mental illness means. I completely disagree, Your Honor. People so much. Now wait a second. You think mental illness is a different term from insanity? I do, Your Honor. All right. Now tell me what the difference is. Mental illness. I mean, you could be diagnosed with any number of mental illnesses. Is this an argument about medicine or about Indiana law in particular? Is there a definition of mental illness in Indiana law that that jury verdict was referring to? No, there was not. No? No special definition in Indiana law? As far as guilty but mentally ill, when you're found guilty but mentally ill. Well, surely the instructions told the jury what that term meant. Yes. And presumably when the jury found mental illness, it was finding whatever that was. Do we know what that was? I don't. I have the jury instructions in front of me. I apologize. However, the jury was presented with three verdicts, guilty, guilty but mentally ill, or not guilty by reason of insanity. And again, to the threshold question here of whether or not this petition was timely, petitioner did never notice the district court that her time was about to expire. When she filed, when she received her paperwork back, allegedly, the first thing she did was attempt to file a successive post-conviction petition in the Indiana Court of Appeals. She was represented by counsel prior to that when her motion for modification was filed. Once that was denied, she received her case filed back approximately a week and a half later, I believe. Now, it appears as the Melendez case in the Seventh Circuit, which we cite in our brief, that both her and her counsel at the time, who was also her post-conviction counsel, did not understand that the proverbial clock was ticking when their motion for modification was filed and when the successive post-conviction petition was filed in state court. And again, the ignorance of the time limitations for both a pro se petitioner and counsel are not grounds to grant equitable tolling. And as to diligence, we have petitioner's assertion that she sent eight letters to the trial court in the year of 2013. I believe three or four of those letters were sent prior to May 6th, 2013, when the limitations period was set to expire. And four or three were sent after. Now, there's nothing in the record that's ever been offered to say what those letters were. We have, if you look at the chronological case summary from the post-conviction court, we have one of those letters, she sent a stuffed animal to the judge. This was all about the time she was seeking modification. She sent a stuffed animal to the judge? She did. And why did she do that? The reasonable inference is that she was seeking leniency because she filed her motion for modification. Wait a minute. She's seeking leniency by sending a stuffed animal to the judge? Based on her subsequent filing, which was... Pardon? Based on her subsequent filing, her next motion she filed within months... She said what? I gave you a stuffed animal, now let me out. And then she filed her motion for modification. The only... Does that strike you as the behavior of a normal person? In Indiana. I can't answer that. With respect to the only letter in the record we have requesting any information with regards to these eight letters is a request for the docket to which the trial court obliged. So we have nothing in the record to suggest after she was offered her medication in 2007 from the DOC that they allege in their brief that she ever filed any request seeking her And then we also have... Would you send me a stuffed animal if I asked for it? I don't see why not. What kind of stuffed animal? There's no evidence in the record to suggest what type. Actually there may be. Cuddly. Yeah. I believe it was a teddy bear, your honor. And it's also important to note during the time period in which she alleges she was incompetent in the DOC to timely file her petition from her direct review to October 2007. She did file in 2005 and that was 186 days after the limitation period days had run. Why she's claiming she was incompetent. She files a pro se post conviction petition in the trial court. Now if the court looks at that petition, she cites the facts of her case. She cites Strickland. She applies the two prong test to her case. And also cites to her past cases. She cites cause numbers to her cases, all suggesting that she had her legal material with her. Now her claim is that she never received her legal file. There's nothing, no evidence to suggest she didn't have legal material with her while in DOC. That has never been argued. Was she in a regular prison? She was in the Indiana's woman's prison. She still is. She still is. That's correct. And it's got about 40 more years. That's correct. Is there some special ward for mentally ill prisoners? At that prison I don't know, your honor. The guilty but mentally ill verdict would have instructed DOC at the time that she was under. She had some sort of mental illness to be evaluated when she was sent to the DOC. Now this court's opinion in Obrecht, I see my time is up. Thank you. Okay. Well thank you very much, Mr. Flores. I'm sorry. Yeah. I got it. Mr. Wackley. I would like to address a few of Mr. Flores' comments. I think it's important to recognize at this stage, particularly at the pleading stage, the petitioner is not required to carry a burden of persuasion. Rather, she must only assert facts under which she would be entitled to equitable tolling. As Mr. Flores stated, there are a lot of things in the record that are not clear. She sent numerous letters to the court, which she said you can maybe possibly infer because it was around the time of her sentence modification, but that is precisely why the district court erred in not having an evidentiary hearing. The only facts that were asserted in the record were the fact that she was on psychotropic drugs and was dealing with mental illness for at least half the limitations period, that she made numerous requests dating all the way back to her criminal trial to every lawyer and every court who had access to her documents, and she was denied every single time. There's nothing in the record that rebutts that. I think Mr. Flores makes a valid point out of all the assumptions and inferences. At the very least, if this court finds there's not sufficient evidence in the record to grant equitable tolling, the factual record needs to be expanded to address those claims. In addition, I would like to state that regarding the plea offer, Mr. Flores is correct. The prosecutor did state that it was not a firm plea offer. However, he did say that he was engaged in a discussion with Ms. Schmid's defense attorney in the restroom that was the beginnings of plea negotiations. To deprive a defendant of even entering into a plea discussion is the grave injustice. She wasn't even allowed to evaluate the claim because, as her defense counsel stated, she was so mentally debilitated she would have only responded with a blank stare if he came to her and presented her with a plea deal that would have given her two to eight years at maximum. She was facing 55 years life in prison, and she was deprived of that right, as he stated very clearly. She couldn't even engage in the discussion. Therefore, I would like to respectfully request that this court- Well, what about- maybe my mind wandered when you were speaking. But Mr. Flores says that the prosecutor said there was no plea offer. He said there's- And that the defense lawyer did not say there was, but he thought there had been. He was vague about it. The defense lawyer definitively testified. They asked him specifically, did you consider this a firm request for a plea offer? He said yes. The prosecutor agreed that there was discussions in the bathroom about a plea deal for reckless homicide. However, he stated that it was not a firm offer because it was the practice of his office to have every firm offer in writing, and there was nothing in writing. However, he admitted that there was the beginnings of a plea negotiations discussed in the restroom that she was deprived of. So therefore, I would like to respectfully request that this court grant equitable tolling. However, if this court feels there's insufficient evidence in the record to remand the case for the district court for expansion of the record, and in regards to the merits of this equitable tolling, I believe there's also sufficient evidence to grant her petition outright on the competency issue. She was denied the constitutional right to be tried while she was competent, and the writ should be granted. Thank you. Okay. Well, thank you very much, Mr. Wackerly and Mr. Floyd. And you were appointed, were you not, Mr. Wackerly? You were appointed. Well, we thank you for your efforts.